IN THE

# SUPREME COURT OF JUDICATURE

OF THE

# STATE OF NEW JERSEY

AT FEBRUARY TERM, 1854.

## ABRAHAM M. BENINGER v. WILLIAM H. CORWIN.

1. A warranty of the soundness of a horse, or other goods sold, is not implied at law from the fact that the price of a sound horse or sound article is paid. The maxim *caveat emptor* applies to all cases where there is no warranty or representation.

2. In a sale of chattels, it is not fraud at law in the vendor not to disclose unsoundness or faults known to him in the article sold.

3. It is no defence to a note given for the difference on an exchange of horses, to show that there was no difference in their value, and that the note was therefore without consideration. The exchange in such case is a sale for a stipulated price, the horse and note of the defendant, and not for so much as the plaintiff's horse was worth.

This cause was brought up by a writ of error to the Morris county Circuit Court. In that court, Beninger sued Corwin on a promissory note given by Corwin to one Kearny. On the trial, it was shown that the note was passed to Beninger by Kearny when overdue; that it had been given by Corwin to Kearny for the difference upon the exchange of horses; that the horses of Corwin and this note were the full value of

Kearny's horses exchanged, had the same been sound; that Kearny's horses were unsound at the exchange, and that this was known to him. It did not appear that any person was present at the exchange, nor whether there was any warranty or false representations at the sale, or any disclosure of the unsoundness of his horses by the defendant. It was further proved that the defendant's horses, at the exchange, were equal in value to Kearny's horses.

Upon these facts the court charged the jury, among other things, as follows:

It is beyond doubt that Kearny knew, when he exchanged with Corwin, that one of the horses was not sound, but that he was worth far less than appearances indicated. The horses of Corwin, together with the amount specified in the note, appears to have been a full consideration for Kearny's horses, if sound. That fact is evidence from which a conclusion may be drawn that he represented the horses at the time to be sound. But, independent of this view, if you are not satisfied that Kearny, with his knowledge of the unsoundness, informed Corwin of it at the time of the exchange, the burthen of which proof in this case lies upon the plaintiff, the withholding of such information was a fraud practised upon Corwin sufficient to vitiate the note. Again, the difference of the estimated value, by the parties, of the two pairs of horses at the time of the exchange was the true consideration of the note, and if you believe them to have been equal in value this note is without consideration.

To this part of the charge a bill of exceptions was taken by the plaintiff.

Argued before the CHIEF JUSTICE and Justices OGDEN and POTTS, by Mr. *Whelpley*, for the plaintiff in error, and Mr. *Scofield*, for the defendant.

The CHIEF JUSTICE. The action below was brought upon a promissory note, given by the defendant upon an exchange of horses. Upon the trial, it appeared in evidence that one of the horses given in exchange by the payee to the maker of the

Beninger v. Corwin.

note was unsound at the time of the exchange, and that the payee knew it. There was no direct evidence of fraudulent representation or concealment.

I. The first error assigned is, that the judge charged the jury that if the vendor, upon a sale or exchange of horses, receive a sound price, it is evidence from which a conclusion may be drawn that he represented the horses at the time to be sound, and that if the vendor have knowledge of the unsoundness at the time of the exchange it is incumbent on him to prove that he informed the vendee of the unsoundness. In the absence of such proof fraud will be presumed.

Under the facts of the case, the charge of the court amounts briefly to this: that if the vendor of an unsound horse, with knowledge of the unsoundness, sell or exchange him for a sound price, the contract will be presumed to be fraudulent, unless the vendor prove affirmatively that he was neither guilty of false representation or fraudulent concealment.

The well settled rule of the common law is, that upon a sale or exchange of goods, if there be no express warranty of soundness and no actual fraud proved, the doctrine *caveat emptor* applies, and the goods are at the risk of the buyer. In the absence of an express warranty, the purchaser must show, in order to vitiate the contract, that fraud or deceit have been practiced with regard to the quality of the article sold. The vendor is not bound to answer, unless he expressly warranted the goods to be sound, or unless he made a false representation, or used some fraudulent concealment respecting them, which amounts to a warranty in law. 2 *Kent's Com.* 478; *Mixer* v. *Coburn*, 11 *Metc.* 562; *Winsor* v. *Lombard*, 18 *Pick.* 60.

A warranty cannot be inferred, at common law, from the fact that a sound price was paid, though the civil law rule is otherwise. *Seixas* v. *Wood*, 2 *Caines* 48; *Holden* v. *Dakin*, 4 *J. R.* 421; *Moses* v. *Ward*, 1 *Denio* 378; *Smith's Mer. Law* 308; 2 *Kent's Com.* 478.

Inadequacy of consideration will neither defeat a contract nor substantiate a charge of fraud. Even in equity inadequacy of consideration or value is in general, of itself, no

ground for impeaching a contract. *Chit. on Con.* 684–31, (*5th ed.*)

The common law (says Justice Story) knows no such principle. The consideration more or less supports the contract. Common sense knows no such principle. The value of a thing is what it will produce, and it admits of no precise standard. 1 *Story's Eq.* § 245.

The case falls directly within the authority of *Fleming* v. *Slocum*, 18 *J. R.* 403.

II. The second ground of exception is, that the difference of the estimated value by the parties of the two pairs of horses at the time of the exchange was the true consideration of the note, and if the jury believe them to be equal in value the note is without consideration.

Doubtless the motive with the maker for giving the note was the estimated difference in the value of the horses. But the legal consideration for the note was the exchange upon request. The form of a declaration in an action for the recovery of money agreed to be paid upon an exchange shows clearly that such is the legal consideration. 2 *Went.* 222; 2 *Chit. Pl.* 274.

If the principle stated in the charge be the true one, then in an action for the recovery of money agreed to be paid on an exchange of goods, the plaintiff must aver in pleading and must prove that the difference in the value of the articles exchanged is equivalent to the price agreed to be paid. If he fail in that proof he must fail in the action. This would annul the contract of the parties, and reduce the action to a simple claim upon an *indebitatus assumpsit* or *quantum meruit.*

The horses and the note of the defendant constitute but parts of one entire consideration paid by him for the horses of the other party. They cannot legally be severed, and treated as if given for different purposes or upon different considerations.

Upon both grounds, the judgment must be reversed.

POTTS, J. I concur. At common law, where the vendor of a chattel in possession sells at a fair price, a warranty of the *title* is implied. 2 *Kent's Com.* 478; *Madison* v. *Stoughten,* 1 *Ld.*

*Ray.* 523; *Salk. R.* 210; *Adamson* v. *Jarvis*, 12 *B. Moore* 241; *Cross* v. *Gardner, Carthew R.* 90; *Stoughtenborough* v. *Haviland*, 3 *Green R.* 266. The civil law goes further, and requires that the vendor and vendee disclose, each to the other, every circumstance within his knowledge touching the thing sold which either had an interest in knowing. *Pothier de Vente, n.* 233 to 241; *Laidlaw* v. *Organ*, 2 *Wheat.* 178; 1 *Story's Eq. Jur.* § 211.

But we adopt the principles of the common, and not the civil law, and hold that a sound price implies only a warranty of the *title*, and not of the *quality* of the article sold. " In such cases," says Mr. Justice Story, " the maxim *caveat emptor* is applied; and unless there be some misrepresentation or artifice to disguise the thing sold, or some express warranty as to its character or quality, the vendee is understood to be bound by the sale, notwithstanding there may be intrinsic defects and vices in it, known to the vendor and unknown to the vendee, materially affecting its value." 1 *Story's Eq. Jur.* § 212; 1 *Kent's Com.* 478. It makes no difference that a *full price* was paid. *Holden* v. *Dakin*, 4 *Johns. R.* 421; *Seixas* v. *Woods*, 2 *Caines' R.* 48; *Defreeze* v. *Trumper*, 1 *Johns. R.* 274; *Snell* v. *Moses*, 1 *Johns. R.* 96; *Fleming* v. *Slocum*, 18 *Johns. R.* 403; *Hart* v. *Wright*, 17 *Wend.* 272; *Moses* v. *Mead*, 1 *Denio* 385; *Mixer* v. *Coburn*, 11 *Metc.* 562; *Parkinson* v. *Lee*, 2 *East* 321; *Chit. on Cont.* 449, (5th *Am.* ed.); *La Neuville* v. *Nourse*, 3 *Camp.* 351; *Johnson* v. *Cope*, 3 *Har. & Johns.* 89; *Dean* v. *Mason*, 4 *Conn. R.* 428; *West* v. *Cunningham*, 9 *Porter's R.* 104. And upon the general doctrine of warranty, see *Chandelor* v. *Lopus*, 1 *Smith's Leading Cases* 145, and *notes;* 2 *Kent's Com.* 479, note (*a*.); *Emerson* v. *Brigham*, 10 *Mass. R.* 209, *note* (*a.*), where, among other things, the exceptions to the general rule may be found stated.

The doctrine, then, being well settled, that the fact of a sound price having been given for the horses by Corwin does not in law imply that Kearns *warranted* them, or either of them, as sound, is that fact evidence from which the jury

might draw the conclusion that Kearny *represented* them as sound? For the same reason, and upon the same principles that a warranty cannot be implied from the premises, a false and fraudulent representation cannot be implied. In both cases the party making the allegation must prove it. Whether it be a contract of warranty, or a fraudulent misrepresentation, or a fraudulent concealment, that is relied on by the vendee, the fact must, as a general rule, be proved, and cannot be implied or presumed from the mere circumstance that a full price was given. *Fleming* v. *Slocum*, 18 *Johns. R.* 403 ; *Mixer* v. *Coburn*, 11 *Metc.* 562. There are exceptions to the rule, but this is not one of them. Indeed the judge expressly told the jury that fraud must be proved, and could not be presumed, and that mere inadequacy of consideration would not establish fraud in a contract. It is equally clear that the burthen of proof was upon the *defendant* to show the misrepresentation, if there was any, and not on the plaintiff. He who alleges must prove his allegation.

For all that appeared upon the trial, Corwin might, at the time of the exchange, have known the condition of the unsound horse as perfectly as Kearns himself.

There was error in the charge on this part of the case.

Admitting that the true consideration of the note was the difference in the estimated value of the property exchanged, as *fixed by the parties themselves at the time*, yet as the case stood without any evidence of a warranty or any proof of misrepresentation, I think the judge was wrong in saying that if *the jury believed* there was no difference in value the note was without consideration in contemplation of law. The law leaves individuals to act upon their *own* estimates of value in reference to property with which they choose to deal. It interferes with no man's bargain, unless in cases of fraud. It must be so. It would open a floodgate of litigation if every dissatisfied vendee of personal property might appeal to a jury to say whether he gave too much or got too little for the article he bought or sold.

Let the judgment below be reversed.

OGDEN, J. This is an action of *assumpsit*, founded upon a promissory note, dated, in New York, October 9th, 1844, for the payment of $200, one day after date, given by Corwin, payable to one John Kearns, jun., or bearer, and transferred by him, a long time after its maturity, to Abraham M. Beninger, the plaintiff.

The jury rendered a verdict in favor of the defendant, and the case is brought before us by writ of error, with several bills of exceptions, which were sealed at the trial.

It will be necessary, upon this review, to state only such of the facts that appeared in evidence as are connected with the ruling of the court below.

Kearns and Corwin were both residents of this state at the date of the note, and dealt in the purchase, exchange, and sale of horses. Each had a pair of horses in market. Those of Kearns were in Newark, those of Corwin in the city of New York. The parties met in New York, came over to Newark together, took Kearns' horses back with them, and during that interview they effected an exchange, in which Corwin gave this note for $200 and his pair of horses for the horses of Kearns. These were horses of fine appearance, well matched, and if sound would have been worth the consideration which was given for them. The facts, however, were that one of Kearns' horses was wind-broken to such an extent as greatly to diminish his apparent value; that Kearns knew of his unsoundness when he purchased him to mate a horse which he had; that he left the pair with Mr. Matlack, in Newark, for sale, stating to him that they were *sound;* that had they been as they were represented to be by Kearns, Matlack could have sold the pair for over $400, but, upon driving them, *he* discovered that one of them was wind-broken, whereupon he declined offering them for sale, and told Kearns of the unsoundness.

It was also proved that the one horse of Kearns was worth $200, but that the defective one was not worth more than $75, at the extent. There was proof that the horses which Corwin passed over to Kearns were worth as much as Kearns' horses

proved to be worth, and that the amount specified in the note is an excess over the real or market value of the horses which Corwin received in exchange. No witness sworn was present at the exchange, nor was there any proof, by the admissions of the parties or otherwise, that any thing was said during the negotiation of exchange respecting the soundness of either of the pairs of horses.

The defence was put upon two grounds—fraud, on the part of Kearns sufficient to vitiate the contract, and a failure of consideration.

Upon the first ground, the judge charged the jury, that as Kearns knew his horse was not sound, and that he was worth much less than his appearance indicated, and as Corwin's two horses, with the amount specified in the note, appeared by the evidence to be a full consideration for Kearns' horses, as sound ones, they had evidence from which a conclusion might be drawn, that Kearns, at the time, represented his horses to be sound: and further, if they were not satisfied that Kearns must have represented his horses to Corwin as sound, to obtain such an advantage in the exchange, still his having knowledge of the unsoundness, and withholding it from Corwin, would be a sufficient " *suppressio veri* " to avoid the note.

A bill of exceptions was prayed and sealed to this charge, and error has been assigned upon it.

It cannot be concealed that Kearns got a great advantage in the trade, and that he put off upon Corwin a defective wind-broken horse; and that if Corwin is bound to pay the note, he will suffer a great loss by the barter: yet the question presses upon the court, whether, under the evidence, a legal defence was established.

Fraud cannot be inferred.

Is its perpetration legally established, either by a false representation of quality at a sale, or by the withholding information which would affect the price, by simple proof of a full consideration having been given for a sound article?

The case discloses no evidence upon which Corwin could recover against Kearns in *assumpsit* for a breach of warranty.

None appears to have been made, and none can be inferred. But a representation not amounting to a warranty may support an action for deceit or defeat a recovery upon a contract. Each party to a bargain must take care not to say or do any thing tending to impose upon the other.

No serious question can be raised as to the law, upon the *one* part of the first ground of the defence. The defendant should have shown by some substantive proofs actual fraud through false representations. The soundness of the price, alone, was not sufficient. 18 *Johns.* 403, *Fleming* v. *Slocum.*

But again, was Kearns bound in law to inform Corwin of the defect of his horse? and, if so, was there sufficient proof, from which a conclusion could lawfully be drawn that he did suppress the truth?

The suppression of the truth in a fact material to a contract, and which a party is bound to disclose, is equivalent to the assertion of a falsehood, and should have a like vitiating influence upon the transaction. By the civil law, the parties to a contract were bound to communicate to each other all circumstances and facts which they would have an interest in knowing, whether intrinsic in the contract, and constituting a part of its essence, and of the value of the subject of the contract; or extrinsic, which, though forming no part of the subject of sale, yet so bearing upon it, that they may create an inducement to enter into or abstain from the negotiation, or affect the value of the thing sold. It required entire good faith in all contracts involving mutual interests. It demanded of a vendor to discover all defects in the article sold which the vendee would be interested in knowing.

The common law, however, has not in cases of *sales of chattels*, as distinguished from trusts and special confidences, adopted a rule so clearly consonant with the dictates of sound morals.

The maxim of " *caveat emptor* " has prevailed to a greater extent; and from the authorities, both English and American, the doctrine seems to be firmly established, that in cases of sales, if there be no warranty as to quality, or wilful misre-

presentation, or artful device to disguise the character or conceal the defects of the thing sold, the vendee should be bound by the contract.

The wrong which this rule sometimes works has subjected it to reproachful comments; and it is not remarkable that in the hurry of a trial at a circuit, and without an opportunity of consulting authorities, a judge should be led, by the equity of a case, to incline to a ruling less severe and apparently more just.

The conveniences of commerce require that one rule or the other should prevail. A purchaser may always demand a warranty or a representation of the quality of the article bought; and if he fails so to do, he acts upon his own judgment. If he omits to take proper care of his rights, it would lead to much litigation if the law should interpose to protect him from the consequence of his own neglect or inattention.

The rule of *"caveat emptor"* will not, however, save a seller from the defence of *fraud*, when set up in an action for the price.

But what is the character of the *fraud* which will avoid a contract of sale? It is not to be found in every deviation from moral rectitude which enters into the details of a sale. The seller may know of defects in his goods; and yet if he makes no false representations, employs no artifice to conceal them, is guilty of no positive deceit, and leaves the buyer to exercise his own judgment, skill, and experience upon the qualities of the subject of sale, whatever ought to be the effect upon the transaction, *on moral grounds*, of such silence, he is not, according to the *cases*, guilty of legal active fraud. In the language of C. J. Parsons, in his work on contracts, "The seller may let the buyer cheat himself *ad libitum*, but he must not actively assist him in cheating himself."

Whatever might have been said or done by Kearns during the negotiation of the exchange, the defendant has not been able to produce substantive proof that he misrepresented the qualities of the unsound horse, or that he used any means or device to hide the defects, or divert the attention of the de-

fendant from a discovery of it, or that he withheld information as to the defect; and a good sound price cannot supply the want of some such testimony.

The judge of the Circuit Court erred in his charge, and the judgment should be reversed on that ground.

He further instructed the jury, that the true consideration of the note was the difference in the estimated value made by the parties of the two pairs of horses at the time of the exchange; and if, from the evidence, they believed that the horses of Corwin were equal in value to those of Kearns, the note stood without consideration, and the second ground of the defence was maintained.

Error is also assigned upon this part of the charge.

Upon a more deliberate examination of the whole case, I am of opinion that the contract was an entirety, and that the separation of the note from the rest of the transaction was erroneous. A partial failure of consideration cannot prevail as a defence to an action upon a note in the courts of this state.

This error is also well assigned.

A third assignment of error is, that the judge refused to instruct the jury that the presumption of law was, that Corwin had solicited of Kearns the exchange of their horses.

The judge did not err in such refusal, as there was nothing shown by the case to support such a presumption.

　　　　　　　　　　The judgment below is reversed.

CITED *in Fitch* v. *Archibald,* 5 *Dutch.* 165; *Smally* v. *Hendrickson, Id.* 374; *Bouker* v. *Randles,* 2 *Vr.* 341; *Shotwell's Ad.* v. *Struble,* 6 *C. E. Gr.* 33; *Wyckoff* v. *Runyon,* 4 *Vr.* 108.